# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**BRIAN P. LEE and**                          Chapter 7
**VALERIE A. LEE,**                           Case No. 09-20663-JNF
            Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court for determination are: 1) the "Motion of Chapter 7 Trustee for Review of Fees of Counsel to Debtors and Special Counsel to Debtors Pursuant to 11 U.S.C. § 329(b)" (the "Fee Review Motion"); 2) the Application of Joseph K. Curran, Jr. for Compensation as Special Counsel to the Debtors (the "Fee Application"); and 3) the Trustee's Objection to Claim of Exemption (the "Exemption Objection"). The Debtors were represented by Attorney Allan R. Curhan, Esq. in their Chapter 13 case. Following the conversion of their Chapter 13 case to a case under Chapter 7, they continued to be, and currently are, represented by him. Joseph K. Curran, Jr., Esq., served as their Special Counsel. He is represented by Warren Agin, Esq. The Debtors, through Attorney Curhan, filed an Objection to the Trustee's Fee Review Motion; Attorney Curran filed a lengthy Response to the Trustee's Fee Review Motion, as well as an affidavit. The Debtors also filed

a Response to the Exemption Objection.

The Court held two hearings with respect to the matters.  The Court held the first hearing on June 5, 2013 on the Exemption Objection and the second hearing on June 20, 2013 with respect to the three matters outlined above.  At the first hearing on the Exemption Objection, counsel to the Debtors requested that the Court review a  letter written by the Debtors.  No party objected to the submission of the letter dated June 5, 2013.  Accordingly, the Court has reviewed the letter and admitted it as evidence.

Following the first hearing on the Exemption Objection, the Trustee filed the Fee Review Motion. At the second hearing, the Court granted all parties an opportunity to present evidence.  All of the parties expressly declined the opportunity to present evidence. Thus, the Court makes the following findings of fact from the record of proceedings in this case, from the representations of counsel made at the hearings, and the Debtors' letter to the Court.  *See* Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014.  The facts necessary to resolve the Exemption Objection, the Fee Application and the Fee Review Motion are not in material dispute.  Accordingly, the Court shall treat the matters as ripe for determination. *Cf.* Fed. R. Bankr. P. 7056.

The matters before the Court shed light on the consequences of the Debtors' failure to timely list and describe a personal injury claim on their Schedule B-Personal Property, as well as their failure to amend their Schedules when it should have been apparent that a valuable asset had been omitted from Schedule B and a legitimate exemption had not been claimed by the Debtors on Schedule C-Property Claimed as Exempt.  Because of these omissions, the Court must examine the appropriate remedies where the Debtors' bankruptcy

attorney failed to adequately represent them, and their Special Counsel exhibited ignorance of the requirements of bankruptcy law, as well as procedural rules governing his authority to disburse proceeds from a settlement of Mr. Lee's personal injury claim to satisfy his fees and costs and to pay creditors with liens on the settlement proceeds.  Due to the failures of Debtors' counsel and Special Counsel to obtain requisite authority from this Court, the Debtors' bankruptcy estate has incurred fees that it otherwise would not have had to incur and has been prejudiced.

## II. PROCEDURAL BACKGROUND AND  FINDINGS OF FACT

On November 4, 2009, the Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code, together with Schedules of assets and liabilities, a Statement of Financial Affairs, a Disclosure of Compensation of Attorney for Debtor filed pursuant to 11 U.S.C. 329(a) and Fed. R. Bankr. P. 2016(b), and a Chapter 13 Agreement between the Debtors and Attorney Curhan.[1]  The Rule 2016(b) Disclosure reflects that Attorney

---

[1] That Agreement provides in part the following:

**BEFORE THE CASE IS FILED:**

**The <u>Attorney</u> agrees to:**

1. Meet with the debtor to review the debtor's debts, assets, income and expenses;
2. Counsel the debtor regarding the advisability of filing either a chapter 7 or chapter 13 case, discuss both procedures with the debtor, and answer the debtor's questions;
3. Explain what payments will be made through the plan, and what payments will be made directly by the debtor for mortgage and vehicle loan payments, as well as which claims accrue interest;
4. Explain to the debtor how, when, and where to make the chapter 13 plan payments, as well as the debtor's obligation to continue making

Curhan was to be paid $2,500 in total and that prior to the filing he had received $1,500.

Attorney Curhan represented at the June 20, 2013 hearing that he received a total of $2,500

in fees for his representation of the Debtors in this case.

————————————————

mortgage payments, without interruption, and the likely consequences for
failure to do so;

5. Explain to the debtor how the attorney's fees and trustee's fees are paid,
and provide an executed copy of this document to the debtor;

6. Explain to the debtor that the first plan payment must be made to the
trustee within 30 days of the date the plan is filed;

7. Advise the debtor of the requirement to attend the 341 meeting of
Creditors, and instruct debtor as to the date, time and place of the
meeting;

8. Advise the debtor of the necessity of maintaining appropriate insurance
on all real estate, motor vehicles and business assets; and

9. Timely prepare and file the debtor's petition, plan and schedules.

**AFTER THE CASE IS FILED**:

\*\*\*

**The <u>ATTORNEY</u> agrees to provide the following legal services in
consideration of the compensation further described below**:

1. Appear at the § 341 meeting of creditors with the debtor;

2. Respond to objections to plan confirmation, and where necessary,
prepare an amended plan;

3. Prepare, file and serve one necessary modification to the plan which
may include suspending, lowering, or increasing plan payments;

4. Prepare, file and serve necessary amended schedules in accordance with
information provided by the debtor;

5. Prepare, file and serve necessary motions to buy, sell or refinance real
property;

6. Object to improper or invalid claims, if necessary, based upon
documentation provided by the debtor;

7. Represent the debtor in motions for relief from stay;

8. Where appropriate, prepare, file and serve necessary motions to avoid
liens on real or personal property; and

9. Provide such other legal services as necessary for the administration of
the case.

On June 15, 2010, more than seven months after the petition date, the Debtors amended their Schedule B-Personal Property to add a personal injury claim (the "Personal Injury Claim") which was the subject of a pending state court proceeding in Plymouth Superior Court, Department of the Trial Court,  namely <u>Brian P. Lee v. Caroline B. Pina, Gail C. Baldwin and George L. Baldwin</u>, Docket No. 2008-01275CV2.  The Debtors described the claim as "Unliquidated 3rd party action. Contingent" and indicated that its value was unknown.  The Personal Injury Claim arose out of an accident involving the Debtor, Mr. Lee, on August 29, 2007, while he was engaged in a construction and renovation project for his employer prior to the commencement of the Chapter 13 case.  The Debtors did not file an Amended Schedule C claiming the Personal Injury Claim as exempt at that time.

On August 18, 2010, approximately ten months after the commencement of the their Chapter 13 case, the Debtors, through Attorney Curhan, filed an "Application to Employ Special Counsel and Affidavit in Support of Application" (the "Application").   The Application did not contain any references to 11 U.S.C.§§ 327 or 328.  Pursuant to the Application, the Debtors sought to employ Attorney Curran of Curran & Desharnais, P.C. as their Special Counsel to represent Mr. Lee in the state court proceeding with respect to his complaint, which was filed in 2008, to recover damages relating to his personal injuries, namely severe damage to a ligament and tendons in his left ankle.  The Application described the services to be performed, including representation of the Debtor, Mr. Lee, in the state court action,  preparation of the action for trial, and, if necessary, representation of Mr. Lee at a trial  before a jury, for a contingent fee of 33.3%.  At the time the Application was filed, the trial was scheduled for August 26, 2010.  Neither the Debtors in the

-5-

Application nor Special Counsel in his affidavit indicated that the Personal Injury Claim was subject to any type of arbitration or that Mr. Lee would seek to arbitrate his claim.

Special Counsel attached to the Application the "Agreement to Perform Legal Services" executed by the Debtor and Special Counsel. The Application, which is dated August 18, 2010, was filed approximately two years after the Agreement was executed. The Application was approved by the Court on November 10, 2010.

Mr. Lee's Personal Injury Claim was the subject of binding arbitration. On or about January 14, 2011, the Plymouth Superior Court granted Mr. Lee's "Petition for Approval of Third Party Settlement," filed on his behalf by Attorney Curran, and confirmed an arbitration award in the sum of $52,648 (the "Award"). Attorney Curran submitted an affidavit in support of emergency consideration of the Petition in which he referenced a stipulation between the Debtors and U.S. Bank, N.A., which this Court had approved in October of 2010, pursuant to which the Debtors and their mortgagee agreed that if the Debtors defaulted in their payment obligations, upon the filing of an affidavit of default, U.S. Bank would be free to exercise its right to foreclose the mortgage on the Debtors' home.

The proceeds of the Award were paid to Attorney Curran. Attorney Curran submitted a "Memorandum of Settlement and Disbursements" to the Superior Court in which he set forth the allocation of the Award pursuant to Mass. Gen. Laws Ch. 152, § 15 as follows:

1. Plaintiff                $14,034.45
2. GUARD Insurance Group    $15,258.67
3. Attorney's Fee           $17,549.33
4. Attorney's Costs         $ 5,778.54

**TOTAL**                                      $52,648.00 [sic][2]

Attorney Curran disbursed the funds without filing an application for compensation in

accordance with 11 U.S.C. § 330 or Fed. R. Bankr. P. 2016 and without obtaining authority

from this Court to make disbursements.

Neither Attorney Curhan nor Attorney Curran informed the Chapter 13 Trustee or

the Court of the existence of the Award, although Attorney Curran represented in his

affidavit that he contacted the Chapter 13 Trustee  prior to the arbitration proceeding "to

discuss the claim and to ascertain the Trustee's intentions regarding the claim." Moreover,

although the Debtors amended their Chapter 13 plan at least four times, they did not amend

their Chapter 13 Plan after January 11, 2011, to account for the Award even though the

Debtors had received $14,034.45 in settlement proceeds and had not claimed an exemption

with respect to the Personal Injury Claim on Schedule C.  Around the time the Debtors

received the Award, the Court entered an order confirming their Fourth Amended Chapter

13 Plan.  The Plan did  not reference  the Personal Injury Claim, the state court proceeding,

or the Award as an asset of the Debtors in the liquidation analysis section of their Plan.

In his affidavit, Attorney Curran stated that prior to proceeding with arbitration, he

contacted Attorney Curhan "on several occasions to discuss the claim," adding that he

informed Attorney Curhan "on several occasions" that he would be contacting the Chapter

13 Trustee to discuss the claim and to ascertain the Trustee's intentions regarding the claim.

According to the unrebutted statement of counsel to the Chapter 7 Trustee, the

---

[2] The correct total is $52,620.99.

Debtors used this disbursement to repay loans to family members and friends which the Debtors had obtained during their Chapter 13 case to make their mortgage payments.[3]  The docket does not reflect that the Debtors filed motions for authority to borrow funds pursuant to 11 U.S.C. § 364 in their Chapter 13 case, and the Court did not approve any borrowings or repayment of loans by the Debtors.  Accordingly, the evidence establishes that the Debtors improperly used property of the estate to pay creditors.  *See* 11 U.S.C. 541(a) and 549(a).

On June 25, 2012, the Chapter 13 Trustee filed a motion seeking dismissal of the Debtors ' case due to their failure to timely make plan payments.  In response, on July 18, 2012, the Debtors filed a "Motion to Convert Case from Chapter 13 to Chapter 7."  The Court granted the motion on July 19, 2012 and Debora Casey was appointed Chapter 7 Trustee.  Following her appointment, the Trustee sought and obtained extensions of time to both object to the Debtors' claimed exemptions and their discharge. See Fed. R. Bankr. P. 4003(b) and Fed. R. Bankr. P. 4004(b), respectively.

On August 9, 2012, Attorney Curhan, on behalf of the Debtors, filed a Motion to Amend Schedules B and Schedule C, together with amended Schedules B and C.  The Debtors failed to disclose the personal injury Award on either schedule.  The Chapter 7 Trustee conducted the § 341 meeting of creditors on August 21, 2012 at which the Debtors and Attorney Curhan were present.  The Trustee examined the Debtors under oath. In response to the Trustee's questions about the Personal Injury Claim and the Award

---

[3] The Trustee's statement is corroborated in part by the Debtors in their letter of June 5, 2013 in which they stated that borrowed from family and friends, at least prior to the filing of their petition,  "to stay caught up with the mortgage."

approved by the Plymouth Superior Court, which the Debtors disclosed at the meeting, Attorney Curhan stated that he had not handled the claim.

Following the § 341 meeting, on September 24, 2012, approximately 20 months after receiving the personal injury Award, the Debtors filed another Motion to Amend Schedule B and Schedule C, together with amended Schedules B and C. The Debtors erroneously listed the state court proceeding and the Personal Injury Claim on Schedule B in an "unknown" amount. Similarly, they claimed the "suit for personal injury in Plymouth Superior Court" as exempt pursuant to 11 U.S.C. § 522(d)(11)(D) on Schedule C, although, at the time of the filing of the amended Schedules, the Debtors had received $14,034.45 in settlement proceeds.

On April 24, 2013, after obtaining extensions of the deadline within which to object to exemptions, the Chapter 7 Trustee filed her Exemption Objection. In her Exemption Objection, the Trustee argued that given the Debtors' failure to seek authority to engage in binding arbitration with respect to the state court proceeding, together with the payments to and disbursements made by Special Counsel without Court authority, it would be inequitable to allow the Debtors to claim any exemption in the proceeds of the Award.

On June 5, 2013, the Debtors indicated in their letter to the Court that they believed that the Personal Injury Claim, the Award, and their receipt of the funds from the Award had been disclosed to the Court. They stated:

> When we went for our Chapter 7 meeting last August, 2012, we were under the impression all of the T's and X's had been crossed [sic]. When the question came up about the injury case, Brian and I both said it had been settled. This

was when we found out that something hadn't been filed.  We don't know the
law, and trusted that the two attorneys representing us were doing their jobs.

Although no party in interest wished to question the Debtors under oath at the hearing on

the Exemption Objection and Fee Review Motion, the Court finds plausible and credible the

Debtors' contention that they relied on their attorneys to comply with the requirements of

the law and procedural rules in their Chapter 13 and Chapter 7 cases.

## III.  COMPENSATION OF DEBTORS' ATTORNEYS

Section 329 of the Bankruptcy Code, entitled "Debtor's transactions with attorneys,"

provides:

(a) Any attorney representing a debtor in a case under this title, or in
connection with such a case, whether or not such attorney applies for
compensation under this title, shall file with the court a statement of the
compensation paid or agreed to be paid, if such payment or agreement was
made after one year before the date of the filing of the petition, for services
rendered or to be rendered in contemplation of or in connection with the case
by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services,
the court may cancel any such agreement, or order the return of any such
payment, to the extent excessive, to--

(1) the estate, if the property transferred--

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor
under a plan under chapter 11, 12, or 13 of this
title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

When an attorney ineptly or incompetently renders services on behalf of debtors, the

-10-

court may order disgorgement of all fees pursuant to § 329.  *See, e.g.*, <u>Hale v. U.S. Trustee</u>,

509 F.3d 1139, 1147 (9th Cir. 2007)(court may examine and reduce fees where attorney failed

to inform debtors about the bankruptcy process and failed to obtain their informed consent

to limited representation); <u>In re Valladares</u>, 415 B.R. 617, 622 (Bankr. S.D. Fla. 2009) ("Courts

may order disgorgement, deny compensation, or impose other sanctions for failure to timely

or properly disclose fees."); <u>In re Henderson</u>, 360 B.R. 477, 488 (Bankr. D. S.C.

2006)(attorney's failure to provide adequate representation of debtors warranted

disgorgement of his fees and other sanctions).  "The reasonable value of services rendered

by a debtor's attorney 'is a question of fact to be determined by the particular circumstances

of each case.  The requested compensation may be reduced if the court finds that the work

done was excessive or of poor quality.'" <u>In re Spickelmier</u>, 469 B.R. 903, 914 (Bankr. D. Nev.

2012)  (citing, *inter alia*, 3 Collier on Bankruptcy ¶ 329.04[1] (Alan N. Resnick and Henry J.

Sommer, eds., 16th ed. 2011).  *See also* <u>Hale v. U.S. Trustee (In re Basham)</u>, 208 B.R. 926, 933

(B.A.P. 9th Cir. 1997), *aff'd*, <u>Hale v. U.S. Trustee (In re Byrne)</u>,  152 F.App'x 924 (9th Cir.

1998)(Table) (affirming bankruptcy court's order requiring disgorgement of fees that were

unreasonable given the lack of contemporaneous time records and the failure to provide

competent and complete representation).

Section 327 of the Bankruptcy Code, entitled "Employment of professional persons,"

governs the employment of special counsel to the estate representative, including Chapter

13 debtors.  It provides in pertinent part:

> The trustee, with the court's approval, may employ, for a specified special
> purpose, other than to represent the trustee in conducting the case, an attorney
> that has represented the debtor, if in the best interest of the estate, and if such

-11-

attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. §327(e).

The employment of special counsel may be on a contingent fee basis; however, the court may allow different compensation or deny compensation to special counsel. *See* 11 U.S.C. § 328(a)("Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."). Where it is demonstrated that an attorney employed as special counsel for a debtor in a personal injury case was ignorant of his duties to the bankruptcy estate, the court may reduce his contingency fee and order payments returned. In <u>In re Acevedo</u>, No. 1-05-27415-dem, 2010 WL 411105 (Bankr. E.D. N.Y. Jan. 26, 2010), the court observed:

> The Bankruptcy Court has the duty to examine the reasonableness of the fees requested by retained professionals independently, notwithstanding the absence of objection by the trustee, debtor or creditor. *See* <u>In re Auto Parts Club, Inc.</u>, 211 B.R. 29, 33 (B.A .P. 9th Cir. 1997)(citing <u>In re Busy Beaver Bldg. Ctr., Inc.</u>, 19 F.3d 833, 841 (3d Cir. 1994).
>
> ***
>
> The Court may also deny compensation where Special Counsel's actions violate the Bankruptcy Code, add administrative expenses to the estate and did not provide a benefit to the estate. A court may deny compensation for services that conferred no benefit on an estate. <u>In re Keene Corp.</u>, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997). The test is an objective one, and courts examine "what services a reasonable lawyer or legal firm would have performed in the same circumstances." <u>In re Ames Dep't Stores, Inc.</u>, 76 F.3d 66, 72 (2d Cir. 1996).

In re Acevedo, 2010 WL 411105 at * 3.

Section 330 of the Bankruptcy Code provides that the court may award to a professional person employed under § 327 reasonable compensation for actual, necessary services of the professional person and reimbursement for actual and necessary expenses. 11 U.S.C. § 327(a). In this district, special counsel to a debtor is required to file an application for compensation which conforms with Fed. R. Bankr. P. 2016 and MLBR 2016-1. According to the court in In re Emanuel, 422 B.R. 443 (Bankr. S.D.N.Y. 2009), aff'd, 450 B.R. 1 (S.D.N.Y. 2011), aff'd, 460 F.App'x 48 (2d Cir. 2012), cert. denied, __ U.S. __, 133 S.Ct. 131 (2012).

> Rule 2016(a) of the Federal Rule of Bankruptcy Procedure states that any entity seeking compensation from the estate for services rendered or reimbursement of necessary expenses must 'file an application setting forth a detailed statement of (1) the services rendered, time expended and the expenses incurred, and (2) the amounts requested.' The rule applies to professionals who are retained pursuant to pre-approved contingency fee agreements.

422 B.R. 448 (citing In re Lenworth Westbrooks, 202 B.R. 520, 522 (Bankr. N.D. Ala. 1996)).

## IV. DISCUSSION

Both Attorney Curhan, as Debtors' counsel, and Attorney Curran, as Special Counsel representing Mr. Lee in connection with the Personal Injury Claim, failed to perform their duties to properly represent the Debtors in several respects and failed to maintain the integrity and transparency of the bankruptcy process. Attorney Curhan's representation was inadequate in a number of ways. Attorney Curran representation also was inadequate. Although he appears to have competently represented Mr. Lee in his personal injury case, he failed to timely file an application for compensation in accordance with Fed. R. Bankr. P. 2016 and MLBR 2016-1 and failed to obtain Court authority for his disbursements. Although

-13-

the circumstances of this case do not reflect harm to creditors from Attorney Curran's actions, his conduct undermined the goals of transparency and full disclosure required to maintain the public confidence in, and the integrity of, the bankruptcy system.  Attorney Curhan had an affirmative duty to conduct a reasonable inquiry into the facts set forth in the Debtors' Schedules and Statement of Financial Affairs.  *See* Lafayette v. Collins (In re Withrow), 405 B.R. 505, 513 (B.A.P. 1st Cir. 2009). *See also* 11 U.S.C. § 527(c). He neglected to cause the Debtors to list Mr. Lee's Personal Injury Claim on Schedules B and C at the commencement of the case.  Although he had an opportunity to testify as to the circumstances surrounding that failure, he chose not to take the stand.  The Court infers from the unrebutted facts that he knew or should have known of the Personal Injury Claim and failed to ensure that the Debtors listed it as an asset.  He did not amend Schedule B to list the Personal Injury Claim until June of 2010 and, at that time, did not cause the Debtors to amend Schedule C to claim the Personal Injury Claim as exempt from property of the estate to the extent allowable under 11 U.S.C. § 522(d).  To date, he has not caused the Debtors to file an amended Schedule C to claim an exemption in Mr. Lee's share of the Award in the sum of $14,034.45.

Attorney Curran in his affidavit indicated that prior to proceeding with arbitration, he contacted Attorney Curhan "on several occasions to discuss the claim," adding that he informed Attorney Curhan "on several occasions" that he would be contacting the Chapter 13 Trustee to discuss the claim and to ascertain the Trustee's intentions with respect to the claim.  Attorney Curran alerted Attorney Curhan that the Debtors' exemptions were an issue.  Under those circumstances, Attorney Curhan, who was charged as Debtors' counsel

Case 09-20663   Doc 178   Filed 07/08/13   Entered 07/08/13 10:03:59   Desc Main
              Document       Page 15 of 24

with a duty to monitor and coordinate the Debtor's bankruptcy case, *see* MBLR Official Form

8, and the Disclosure of Compensation of Attorney for Debtor filed pursuant to 11 U.S.C.

§ 329 and Fed. R. Bankr. P. 2016(b), failed to competently represent the Debtors' interests.

In addition, Attorney Curhan should have been aware of the personal injury Award

approved by the Plymouth Superior Court in January of 2011. Attorney Curhan filed the

Application for Employment of Special Counsel and had a duty to oversee the state court

proceeding and maintain regular communications with Attorney Curran about the status

of the tort case. He exposed the Debtors to a potential adversary complaint under 11 U.S.C.

§ 727 by failing to disclose receipt of property of the estate which had not been claimed as

exempt.

Attorney Curhan was obligated to disclose the amount of the personal injury Award

once it was obtained, and the receipt of that Award also should have been the subject of an

amended claim of exemption on Schedule C. *See* 11 U.S.C. § 522(d)(11)(D). Attorney Curhan

did not properly or timely amend Schedules B or C to disclose or claim an exemption for

the Award. Had he periodically checked with Special Counsel, as was his obligation, he

would have been aware of the Award. His failures to become aware of it or to disclose it as

property of the estate were negligent and, as noted above, exposed the Debtors to serious

financial harm.

Attorney Curhan also should have claimed the Personal Injury Claim as exempt

property on Schedule C up to the allowable amount under 11 U.S.C. § 522(d)(11) at the

inception of the case. Absent an allowed exemption, Attorney Curhan was obligated to

amend the Debtors' Chapter 13 plan to provide for a distribution of the proceeds of the

-15-

arbitration Award.

Moreover, Attorney Curhan did not communicate with his clients about their obligations as Chapter 13 debtors, as it appears they borrowed money during their Chapter 13 case and repaid loans from family members and friends without Court authority, in violation of bankruptcy law. *See* 11 U.S.C. § 329. Attorney Curhan proffered no legitimate reason for his failure to properly represent the Debtors in this case, although he was offered the opportunity to present evidence on his own behalf.

Attorney Curran also failed to competently perform his duties as Special Counsel. Having obtained an order approving his employment, he was obligated to familiarize himself with the rules of this Court, to periodically apprise Attorney Curhan of the status of the state court proceeding, to inform him of the contents of his conversations with the Chapter 13 Trustee, and to advise him of the Award following the arbitration proceeding. Attorney Curran's decision to disburse the proceeds of the Award resulting from the Personal Injury Claim to third parties, himself, and the Debtors, in contravention of applicable bankruptcy law and procedural rules was improvident at the very least and negligent at worst. He failed to file and obtain an order approving an application for compensation before paying himself as required by Fed. R. Bankr. P. 2016 and MLBR 2016-1. Although Attorney Curran belatedly filed a Fee Application on May 28, 2013, the Fee Application does not contain a breakdown of the hours spent and the service performed to enable the Court to determine whether the 33.3% contingency fee he paid himself was reasonable.

The errors by both attorneys were not minor or harmless mistakes as they argue. This

-16-

Court finds that, had Attorney Curhan performed his duties properly, he would have advised Attorney Curran of the need to obtain permission from this Court before disbursing the proceeds of the personal injury Award, which were property of the bankruptcy estate as the Debtors had not filed a valid claim of exemption, thereby obviating Attorney Curran's present predicament.  The personal injury Award should not have been disbursed to the Debtors absent an allowed exemption, and fees should not have been paid to Attorney Curran absent the filing of a proper fee application and Court order.

The omissions of Debtors' counsel and the imprudent act of Special Counsel resulted in significant and needless expenditure of time and money by the Chapter 7 Trustee and her counsel.  The attorneys' representation of the Debtors was characterized by carelessness and a lack of knowledge of the Bankruptcy Code and Rules.  Their mishandling of this case may have deprived the creditors of the estate of the benefit of an increased dividend under a Chapter 13 Plan, and it caused the Trustee and her counsel unnecessary work in investigating the facts relating to the Personal Injury Claim and Award.  They also caused their clients distress, as is apparent from the submission of their letter to the Court.  Their objections to the Fee Review Motion by both attorneys were unmeritorious and inconsistent with this Court's obligation to review compensation.  The objections further compounded and delayed the administration of this case.

The fees Attorney Curhan received were not reasonable compensation for the inadequate services he rendered to the Debtors.  He failed to properly claim an exemption, failed to amend Schedule C when warranted, failed to monitor the proceedings in the state court and the actions of Special Counsel, and failed to advise his clients of their duties as

-17-

Chapter 13 debtors. The Court shall order him to disgorge $2,500 to the estate.

The fees Attorney Curran received may have been reasonable compensation for his services, but the Court cannot evaluate the reasonableness of his fees without an application that comports with MLBR 2016-1. Additionally, as noted above, Attorney Curran failed to properly perform the duties of Special Counsel as he failed to obtain authority for his disbursements and failed to file an application for compensation. Although under Massachusetts law he has a lien for his services, *see* Mass. Gen. Laws ch. 221, § 50[4] that lien only secures "reasonable fees and expenses." Thus, the Court is empowered to reduce Special Counsel's fees. Pursuant to 11 U.S.C. § 329, the Court may order the return to the estate of a fee paid to an attorney for the debtor to the extent compensation exceeded the reasonable value of services. Under the circumstances of this case, the Court shall order

---

[4] Section 50 provides:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have *a lien for his reasonable fees and expenses* upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of the client or of the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien; provided, that the provisions of this sentence shall not apply to any case where the method of the determination of attorneys' fees is otherwise expressly provided by statute.

Mass. Gen. Laws ch. 221, § 50 (emphasis supplied).

Attorney Curran to disgorge to the estate the sum of $2,500. The Court otherwise approves

his Fee Application as Special Counsel to Mr. Lee in connection with the Personal Injury

Claim and Award.

## V.  THE TRUSTEE'S EXEMPTION OBJECTION

Property of a bankruptcy estate includes any cause of action or claim for personal

injury which the debtor has the ability to assert as of the commencement of a bankruptcy

case.  *See* 11 U.S. C. §§ 541(a), 1306.  *See also* <u>Howe v. Richardson (In re Howe)</u>, 193 F.3d 60

(1st Cir. 1999), *cert. denied,* 529 U.S. 1021 (2000); <u>Matter of Yonikus</u>, 974 F.2d 901, 904 (7th Cir.

1992); <u>In re McDonald</u>, 326 B.R. 6, 10 (Bankr. D. Mass. 2005).  Using the federal exemptions,

a debtor may exempt his right to receive an award traceable to a payment not to exceed

$21,625 "on account of personal bodily injury, not including pain and suffering or

compensation for actual pecuniary loss, of the debtor" or "a payment in compensation of

loss of future earnings of the debtor" to the extent reasonably necessary for the support of

the debtor or a dependent.   11 U.S.C. § 522(d)(11)(D), (E).

In general, a debtor may amend a claim of exemption before the case is closed. *See*

Fed. R. Bankr. P. 1009. Courts, however, have denied an amendment to a claim of exemption

under several circumstances. Where the debtor has failed to timely list or exempt a personal

injury claim, where the debtor has delayed amending exemptions, or where the debtor has

caused prejudice to creditors or the estate, courts have denied leave to amend. *See* <u>Wood v.

Premier Capital, Inc. (In re Wood)</u>, 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003) ("if a debtor

intentionally conceals or fails to disclose estate property, the debtor will be barred from

claiming such property as exempt, even if the property would have been exempt had it been

properly scheduled and claimed."). Moreover, courts have denied leave to amend exemptions where a debtor has acted in bad faith by concealing an asset or undervaluing it during the case. *See* Hannigan v. White (In re Hanninngan), 409 F.3d 480, 481 (1st Cir. 2005) ("[A] bankruptcy court has discretion to deny the amendment of exemptions where the amendment would prejudice creditors or where the debtor has acted in bad faith or concealed assets."). Furthermore, even if an exemption is allowable, the bankruptcy court may surcharge exempt property with the costs of a trustee's administrative expenses in pursuing a concealed asset. *See* Malley v. Agin, 693 F.3d 28, 30 (1st Cir. 2012).

If the Debtors file a further amended Schedule C to claim an exemption in the Award, the Court shall overrule the Exemption Objection, even though they will have asserted it in an untimely fashion. In the absence of any evidence to the contrary, the Court is convinced that the failure to timely disclose the Personal Injury Claim and then the Award, as well as the failure to claim the Award as exempt, were not instances of bad faith conduct on the part of the Debtors. Rather, the failure to properly amend Schedule C was due to the carelessness of Attorney Curhan. Likewise, the disbursement of the proceeds of the Award, was the fault of Attorney Curran, not the Debtors. The Debtors relied on their attorneys to adequately represent them; the surcharge of their exemptions is unwarranted under the facts of this case.

## VI. SANCTIONS

The court in In re Khan, 488 B.R. 515 (Bankr. E.D.N.Y. 2013), observed:

Sanctions, under any authority, should not be imposed lightly. They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy. They should issue "'narrowly and with great caution, so as not to

stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" <u>Palagonia v. Sachem Cent. Sch. Dist.</u>, 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010) (quoting <u>Romeo v. Sherry</u>, 308 F.Supp.2d 128, 148 (E.D.N.Y. 2004)). <i>See</i> <u>Mone v. Comm'r</u>, 774 F.2d 570, 574 (2d Cir.1985) (stating that a court should take into account these considerations, noting that the power to sanction "carries with it the potential for abuse").

488 B.R. at 528-29. Attorneys may be sanctioned for excess costs and attorneys' fees incurred due to the unreasonable multiplication of proceedings pursuant to 28 U.S.C. § 1927.[5] This court in <u>Sunshine Three Real Estate Corp. v. Housman (In re Sunshine Three Real Estate Corp.)</u>, No. 09-1330, 2010 WL 1541428 (Bankr. D. Mass. April 15, 2010),[6] observed:

Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct." <u>Mapother & Mapother, P.S.C. v. Cooper ( In re Downs)</u>, 103 F.3d 472, 477 (6th Cir. 1996); <u>In re 680 Fifth Ave. Assoc.</u>, 218 B.R.

_____

[5] Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.§ 1927.

[6] In <u>Sunshine Three</u>, the Court noted:

Although courts are divided as to whether bankruptcy courts have jurisdiction to award sanctions under 28 U.S.C. § 1927, the United States Court of Appeals for the Third Circuit and courts in this district have ruled that the bankruptcy court has such authority. <i>See</i> <u>In re Schaefer Salt Recovery, Inc.</u>, 542 F.3d 90, 105 (3d Cir. 2008)(the bankruptcy court has authority to impose sanctions under § 1927); <u>Stone v. Casiello (In re Casiello)</u>, 333 B.R. 571, 575 (Bankr. D. Mass. 2005) (same); <u>In re Lincoln North Assoc. Ltd. P'ship</u>, 163 B.R. 403 (Bankr. D. Mass. 1993)(same).

2010 WL 1541428 at * 3.

305, 323 (Bankr.S.D.N.Y.1998) ("Bankruptcy courts have the same inherent sanction authority as district courts. . . ."). Similarly, bankruptcy courts may sanction attorneys who unreasonably and vexatiously multiply court proceedings pursuant to 28 U.S.C. § 1927. In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 230 (2d Cir. 1991) (observing that bankruptcy courts "may impose sanctions pursuant to 28 U.S.C. § 1927"); In re Truong, No. 07–12194, 2008 WL 1776227, at *5 (Bankr. S.D.N.Y.  Apr.14, 2008) ("A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 under the same standard as a district court.") (Peck, J.). . . .

Courts may use their inherent power to sanction attorneys for actions taken on behalf of a client in the course of litigation, so long as those actions were taken in bad faith. Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001) (observing that sanctions are appropriate under court's inherent power "where the attorney has acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation"); U.S. v. Seltzer, 227 F.3d 36, 41–42 (2d Cir. 2000); Lubit v. Chase (In re Chase), 372 B.R. 142, 154–55 (Bankr. S.D.N.Y. 2007). Likewise, courts may sanction attorneys pursuant to 28 U.S.C. § 1927 when an "attorney's actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Revson v. Cinque & Cinque, 221 F.3d 71, 79 (2d Cir. 2000) (quoting Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986)) (internal quotation marks omitted) (emphasis in original).

The same standard applies to both theories. Oliveri, 803 F.2d at 1273 ("we hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to involve the court's inherent power"); In re Truong, 2008 WL 1776227, at *5 ("There is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith."). "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith-that is, 'motivated by improper purposes such as harassment or delay.' " Eisemann v. Greene, 204 F.3d 393, 395–96 (2d Cir.2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)). Courts require a finding of bad faith to sanction an attorney's actions taken on behalf of a client to ensure that an "attorney's legitimate efforts at mere zealous advocacy for the client" are not punished while keeping courts unencumbered by "litigation that is undertaken in bad faith, vexatiously, wantonly, or for oppressive reasons." Seltzer, 227 F.3d at 40 (quoting Oliveri, 803 F.2d at 1272) (internal quotation marks omitted). Courts must find bad faith based on *clear* evidence. Revson, 221 F.3d at 79 ("[T]o impose sanctions under either authority, the trial court

-22-

must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.") (emphasis added).

Sunshine Three, 2010 WL at *2-3 (quoting In re Greene, 422 B.R. 469, 473–74 (Bankr. S.D.N.Y. 2010)).  *See also* F.A.C., Inc. v. Coop. De Seguros De Vida De Puerto Rico, 563 F.3d 1, 6 (1st Cir. 2009) (A court may award sanctions upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.), 458 B.R. 473, 490-91 (Bankr. N.D. Ill. 2011), *aff'd,* No. 11 C 8782, 2012 WL 1802092 (D. Ill. May 15, 2012) ("Section 1927 sets a higher standard for sanctions than other sources, such as Rule 11.").

The Trustee did not request sanctions against Attorney Curhan or Attorney Curran under Fed. R. Bankr. P. 9011 or 28 U.S.C. § 1927.  Moreover, she did not call either Attorney Curhan or Attorney Curran as witnesses to inquire about the facts and circumstances surrounding their decisions during the course of representing the Debtors in this case.

Based upon the existing record, the Court cannot find that either Attorney Curhan or Attorney Curran engaged in bad faith or vexatious conduct that would warrant sanctions apart from the disgorgement of fees pursuant to 11 U.S.C. § 329 to compensate the Trustee and her counsel for their needless investigative work and to signal this Court's concern for counsels' failure to maintain the integrity of the bankruptcy process by adhering to the Bankruptcy Code and the Bankruptcy Rules.

## VII. CONCLUSION

For the reasons discussed above, the Court shall enter and order granting the Trustee's Motion for Review of Fees of Counsel to Debtors and Special Counsel to the

-23-

Debtors.  The Court shall enter orders requiring Attorney Curhan to disgorge to the estate the sum of $2,500 and Attorney Curran to disgorge to the estate the sum of $2,500.  Upon the submission by the Debtors of an amended Schedule C, the Court shall enter an order overruling the Trustee's Exemption Objection.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 8, 2013